———— •O•• ————

## Carroll *vs.* Carroll, executor, &c.

An executor, to whom the testator had given full power to sell, dispose of, lease, or mortgage, any or all of his real estate, for the payment of debts and legacies, and for the division of the balance among the devisees named in the will, by his acts held himself out to the devisees as engaged in winding up the estate, and discharging claims that would be prior to theirs; *Held*, that while he was doing, or professing to do this, the statute of limitations could not run against *them*, who had no rights as against *him*, until those prior claims were paid.

*Held also*, that every new act of his, in raising money as executor, out of the estate, to pay the debts of the testator, was as effectual an acknowledgment of his continuous acting as executor, and his continued and unbroken liability as executor, as if, in each case, he had promised each devisee or legatee, that he would account as executor.

*Held further*, that executing mortgages in the character of executor, upon a part of the estate, reciting the power for that purpose given him in the will,

and alledging that it was " for the purpose of raising funds, to pay off and discharge existing debts and liabilities upon and against the estate of the testator," were acts of this description.

A demurrer must, generally, depend on that which appears in the complaint, (or pleading demurred to,) and not on that *quod non constat*, unless this last is an essential to a *prima facie* cause of action.

If lands are sold by an executor, under a power for that purpose contained in a will, to pay debts, a devisee who has an interest in the residue has a right to an account from the executor, of what the debts of the testator were, and of what amount of personal estate has been received by the executor to pay those debts; that he may know whether such sales are valid; and if valid, whether he is entitled to any, and if so, how much of the money raised thereby.

A fishing bill, in the objectionable sense, is one in which the plaintiff shows no cause of action, and endeavors to compel the defendant to disclose one in the plaintiff's favor. The expression is not applicable to a bill filed by a devisee or legatee against an executor, for an account; although there is an avowed ignorance of the exact amount of moneys that the executor has realized from the estate; that being a matter peculiarly within the executor's knowledge, and which the plaintiff, for that reason, is entitled to " fish out" of the executor, by a prayer for discovery.

In Equity. This was an appeal from an order, made at a special term, overruling the demurrers put in by the defendant Charles H. Carroll, to the amended bill of complaint of the complainant Daniel J. Carroll. The bill was filed in December, 1846, in the court of chancery, by the complainant, one of the heirs, legatees, and next of kin of Charles Carroll, deceased, against the executor, Charles H. Carroll, to obtain a full account of the testator's personal estate; the disposition thereof by the executor; the moneys received by him from the real estate, and what dispositions he had made of them; and a general account of the defendant's transactions as executor; and to have the relief therein prayed for, that the defendant Charles H. Carroll might account; and that the moneys due from him to the estate of the testator might be distributed among the parties entitled thereto. The defendant demurred to the bill as originally filed, and it was amended in November, 1847. The bill set out the last will and testament of Charles Carroll, made the 14th Sept. 1823, containing devises and legacies to his wife, and children, of whom the complainant was one, and appointing the defendant,

Carroll v. Carroll.

one of the testator's sons, his sole executor, with full power to sell and dispose of all or any part of the real estate, or to lease or mortgage it, for the payment of the debts and legacies, and for the equal division of the balance among the testator's seven children, should a sale for the latter purpose be deemed necessary and proper, by the executor. But the bequests to his children were not to be apportioned among them, until the sum of $10,000 was taken out for the executor, and the same amount for the testator's wife; nor until all the testator's just debts should be provided for and paid out of his estate. The bill further stated the death of the testator in October, 1823; that in 1824 letters testamentary were issued to the defendant, who took upon himself the duties of such executor, and took possession of all the personal estate of the testator, and of all his real estate, and had ever since acted, and at the time of filing the said bill was still acting as the executor of the estate of the said testator, under the provisions of his will. The bill also showed that in March, 1838, the defendant, describing himself as executor of the last will and testament of Charles Carroll, and reciting the power of sale, leasing and mortgaging contained therein, made two conveyances in the nature of a mortgage, to the Farmers' Loan and Trust Company, for $43,000; and this was alledged, in those instruments, to be "*for the purpose of raising funds to pay off and discharge existing debts and liabilities upon and against the estate of the said testator.*"

The defendant demurred to the amended bill, alledging various grounds of demurrer to different parts of the bill; but relying mainly upon the statute of limitations.

*B. F. Butler* and *G. Wood*, for the plaintiff.

*C. P. Kirkland*, for the defendant.

*By the Court*, MITCHELL, J. This bill was filed in December, 1846. It shows that Charles Carroll, the testator, made his will in 1823, and died in October in that year, and left the plaintiff, one of his heirs, legatees, and next of kin, and the defendant

Charles H. Carroll, his executor; and that the will was proved by the executor in 1824—who, from that time to 1838, has acted as executor, receiving the personal estate, leasing, mortgaging, and conveying the lands, under the powers contained in the will. So late as the first of March, 1838, he mortgaged some of the lands to the Farmers' Loan and Trust Company for $43,000, for the purpose, as alledged in the mortgage, "of raising funds to pay off and discharge existing debts and liabilities, upon and against the estate of said testator." He, therefore, down to a period within nine years before the filing of the bill, was continuing to act, professedly, in settling up claims against the estate, which must be paid before the heirs or legatees could claim any thing. The will gave him full power to sell, lease, or mortgage any part, or the whole of the real estate, for the payment of the debts of the testator, and of legacies, and for the equal division of the balance among the seven children of the testator. The plaintiff having borrowed $43,000, as he alledged, to pay the debts of the testator, can not now say, as against the devisees, that the debts were all settled before that, and more than ten years before the bill was filed, and they could, therefore, have called him to account more than ten years ago, for those matters; and are now barred by the statute of limitations. He has, by his acts, held himself out to the devisees, as engaged in winding up the estate, and discharging claims that would be prior to theirs, and while he was doing, or professing to do this, the statute of limitations could not run against *them*, who had no rights as against *him*, until those prior claims were paid. Every new act of his in raising money as executor, out of the estate, to pay the debts of the testator, was as effectual an acknowledgment of his continuous acting, as executor, and his continued and unbroken liability as executor, as if, in each case, he had promised each devisee or legatee that he would account as executor.

He was bound to apply the personal estate, first, to pay the debts; (the testator having died before 1830;) and, if that part of the estate, with the parts received by him on sales, mortgages, or leases of the real estate, was sufficient to pay all the debts of the testator, then the devisees are entitled to compel him to

Carroll *v.* Carroll.

account for the $43,000 raised by him on the 1st of March, 1838, under the pretense (as it then would be) that it was raised to pay the debts of the testator. If the mortgagee would be protected, in such case, by the fact that there are debts still due by the deceased, the executor, who had received the means to pay those debts from other resources of the estate, would not be allowed to keep both in his possession without an account. Even, therefore, if the widow was entitled to all the personal estate absolutely—as her title would be limited to what remained after the payment of debts—the executor must render an account of the personal estate, that it may be seen whether the allegation set up by him when he borrowed the $43,000, was true, viz. that the mortgage was necessary for the purpose of paying the debts of the deceased. If the personal estate, and other property received by him from the estate, were adequate to pay those debts, that allegation was not true, as between him and the plaintiff; and if not true, he is clearly accountable for the moneys received on that loan. This is a sufficient ground to overrule all the demurrers that set up any statute of limitations. If there are any circumstances, not disclosed by the bill, which would make the statute apply, the defendant can set them up in his answer. It need not now be determined, whether the widow was entitled to the personal estate absolutely, or not; nor whether, if the plaintiff claimed only as legatee, he would be barred : he is entitled to an account of the personal estate for the reasons before stated.

The executor next objects, that he can not be called to account for the real estate, for several reasons : first, because the legal title was in the devisees, and *non constat*, but that they could have had possession at any time.

The bill alledges that the defendant Charles H. Carroll took possession of all the real estate, as well as the personal. This he could do through tenants under him, by virtue of his power of leasing : and then, if the plaintiff could have got possession at any time, it is the business of the defendant to alledge that by way of defense. A demurrer must, generally, depend on that which appears in the complaint, and not on that, *quod non con-*

Carroll v. Carroll.

*stat,* unless this last is an essential to a *prima facie* cause of action.

The object of the bill, too, is to make the defendant account, not for what he did not receive, but for what he did receive, and seems limited to what he received under the power of leasing, mortgaging, and selling. This also answers the second cause of objection, viz. that the defendant had only a power of sale, and so was not bound to look after the plaintiff's lands. But he is bound to render an account of what he got on the mortgage, sale, or lease of the plaintiff's lands. The third cause is, that if the defendant sold the lands in the due execution of his power, the plaintiff has no complaint to make; and if he did not so sell, the plaintiff's title is not affected. Neither of these positions is correct. If the lands were sold in the due execution of the power, before the first of March, 1838, the plaintiff has a right to an account of what the debts of the testator were, and of what amount of personal estate has been received by the executor to pay those debts; that he may know whether the mortgage of the first of March, 1838, was valid; and if valid, whether he is entitled to any, and if so, to how much, of the money raised by it.

If the sale was under the pretense of debts being unpaid, when the executor had assets to pay them with, a purchaser might perhaps be protected; and it would, at all events, be more just to resort to the executor, and make him suffer for his wrong-doing, than to sue an innocent purchaser.

It is said the bill is vague and uncertain, and a fishing bill. There is no vagueness nor uncertainty in the allegations contained in the bill. The facts are clearly detailed; nor is there any objectionable vagueness in the relief sought. There is an avowed ignorance of the exact amount of moneys that the executor has realized from the estate; but that is a matter peculiarly within the executor's knowledge, and which the plaintiff, for that reason, is entitled to "fish out" of the executor by a prayer for discovery. A fishing bill, in the objectionable sense, is one in which the plaintiff shows no cause of action, and endeavors to compel the defendant to disclose one in the plaintiff's favor. A bill for discovery and relief shows (as this does) a cause of action,

Carroll *v.* Carrol

and prays for the discovery of particular facts, alledged to be true in fact, but which are peculiarly within the knowledge of the defendant. The matters here to be discovered are merely matters of account, and are merely evidence, and that not so much that the plaintiff has a cause of action, as what the amount of his recovery should be.

The bill is said to be multifarious. It relates, in fact, to one single matter, the agency of the defendant as executor of the estate : and every thing introduced into the bill, arises out of that one subject; for this reason the account is required of him; for this reason among others, the plaintiff insists that the mortgages to the Farmers' Loan and Trust Company, and to the North American Trust and Banking Company, are not valid: and those companies had a common interest with the executor to show that from the true state of the accounts, there were debts of the testator still due, which authorized the mortgages or deeds to them.

There being this sufficient ground for making the companies parties, there was nothing to prevent the plaintiff from showing that the conveyances held by those companies were bad, also, for other reasons. The companies do not raise the objection; but the executor is not injured by the companies' being parties ; but he is benefited, as the decision to be made in this action will save litigation hereafter, on the same subject, between him and those companies.

The order at special term, overruling the demurrers, should be affirmed with costs.

[New-York General Term, June 14, 1851. *Edmonds, Edwards* and *Mitchell,* Justices.]